# Hall *v.* Posey.

*Action for Damages by Servant, for Personal Injuries.*

1. *Sufficiency of complaint.*—The complaint in this case, which sought to recover damages for personal injuries sustained by plaintiff while engaged in feeding a circular saw in the defendant's employment, and which is set out in the statement of facts, "is equally as full, explicit and direct, as the complaint in the case of *M. & O. Railroad Co. v. Thomas*, 42 Ala. 672," which was held sufficient on demurrer; and is not obnoxious to any of the grounds of demurrer specifically assigned.

2. *Charge to jury construed; explanatory charge.*—A charge to the jury in these words: "If the jury believe that the saw was out of order, and more dangerous than a sharp saw by reason of not being properly sharpened, and that the dullness of the saw caused the injury here complained of, and that this was unknown to the plaintiff, and that it could have been known to the defendant but for the want of reasonable care and diligence in keeping the saw in the proper condition, then their verdict ought to be for the plaintiff,"—does not invade the province of the jury, by assuming as fact matters dependent entirely on oral testimony; nor in failing to limit their conclusions or belief to the matters established by the evidence, as in the usual form: "If the jury believe from

[Hall v. Posey.]

the evidence;" and if injury was apprehended from its form, an explanatory charge should have been asked.

3.  *General charge in favor of defendant; when authorized, or proper.* A general charge in favor of the defendant should never be given, except when the plaintiff has failed to make out a *prima facie* case, or where, on the admitted facts, he is not entitled to recover; and where there is any conflict, however slight, in the testimony as to any fact material to the defense, such charge is properly refused.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This action was brought by Lawrence Posey against Fred Hall, to recover damages for personal injuries sustained by plaintiff while feeding a circular saw in the defendant's employment; and was commenced on the 16th March, 1885. The complaint contained three counts, in substance as follows:

1.  Plaintiff claims $1,000 as damages, because, at the time of the injuries complained of, defendant was engaged in running an engine and circular saw for the purpose of sawing wood; and it was his duty to have said engine and saw, with other parts of the machinery connected therewith, in good repair and proper condition; and plaintiff was in the employment of said defendant, and was required by his employment to place the wood to be sawed on the table connected with said saw, to be sawed into proper lengths; that while in said employment, and in the service of said defendant, to-wit, on the 11th February, 1885, "plaintiff had several of the fingers of his right hand badly cut and mutilated," and was from said injuries sick and disabled, &c.; "and said wrongs were suffered because of the wrong and gross negligence of the defendant in running said saw, which was out of order, and unsafe, and unfit to be used in said business, and which, but for the want of proper care and diligence, would have been known to said defendant; and all of which was unknown to plaintiff."

2.  [After alleging that the defendant was engaged in running an engine and circular saw, as before, and "that it was his duty to exercise due care and diligence in providing competent servants to run said engine and saw," and that plaintiff was employed in the business, and was required to place the wood on the table to be sawed.]  "That heretofore, to-wit, on the 11th February, 1885, while in such employment and service, plaintiff had several of the fingers of his right hand badly cut and mutilated," and was thereby rendered sick and disabled, &c.; "and that said injuries and wrongs were suffered because of the want of due care and diligence on the part of said defendant in not providing and having competent servants to run said engine and saw for the purposes aforesaid; and which, but for the want of due care and diligence on the part

of the defendant, would have been known to him, and all of which was unknown to the plaintiff."

3. [After alleging, as before, plaintiff's employment by defendant, and "that it was the duty of said defendant to have said engine and saw, and other parts of the machinery therewith connected, in good repair and proper condition, and to have the said engine and saw run with care."] That while in such employment, on the day aforesaid, "plaintiff had several of the fingers of his right hand badly cut and mutilated," whereby he was disabled, &c.; "and said injuries and wrongs were suffered because of the want of due care in providing fit and competent servants to run said saw and steam-engine, and which, but for the want of due care and diligence, would have been known to the defendant, and all of which was unknown to plaintiff."

The defendant demurred to each count of the complaint, and assigned the following as grounds of demurrer: *To the first count*—1st, "because it fails to allege in what respect or particular said saw was out of order, unsafe, and unfit to be used in said business;" 2d, "because it fails to show that said saw was originally unsafe and unfit to be used in said business, by reason of inherent defects in its make or construction, or that it became out of order, unsafe and unfit to be used in said business, by reason of the use and working of the same;" 3d, "because it claims that plaintiff's alleged injuries were caused by the wrong and gross negligence of the defendant, and fails to point out in what respect this defendant was guilty of any wrong and gross negligence in running said saw." *To the second count*—1st, "because it shows that plaintiff suffered said alleged injuries by reason of the incompetency of his fellow-servants, and fails to show which of his fellow-servants was incompetent to run said saw and engine;" 2d, "because it fails to allege that said alleged injuries were occasioned without the fault or neglect of the plaintiff;" 3d, "because it fails to show that defendant's servants, employed to run said saw and engine, were incompetent and unfit to perform that duty, and that plaintiff sustained said alleged injuries because of the want of skill and competency of said servants." *To the third count*—1st, "because it fails to allege that defendant's said servants, employed to run said saw and engine, were incompetent and unfit to discharge or perform that duty, and that defendant knew this before said alleged injuries occurred;" 2d, "because it fails to allege that plaintiff's said alleged injuries were occasioned by reason of the improper or unskillful running or management of said engine and saw;" 3d, "because, if defendant did not exercise due care in procuring fit and competent servants to run said saw and engine, still he is not liable to

plaintiff, unless said alleged injuries were attributable directly
to the improper or unskillful management and running of said
engine and saw by such incompetent and unfit servants." The
court overruled the demurrers, and the cause was tried on issue
joined on the pleas of not guilty and contributory negligence,
resulting in a verdict and judgment for plaintiff, for $475.

The bill of exceptions purports to set out all the evidence,
in substance as follows : The defendant owned a wood and coal
yard, and used a circular saw, operated by a steam-engine, for
the purpose of cutting the wood into proper lengths. The
wood to be sawed was placed on a small table by the side of the
saw, the top of which moved on a slide, and which was pushed
forward by the person feeding the saw, while he held the stick
of wood firmly against a brace-board on the top. The plaintiff
had been in the employment of the defendant, driving a cart,
in and about the yard, for seven or eight years; but he had
never undertaken to run or feed the saw. On the morning of
February 11th, 1885, as he testified, when he reported for duty,
Mr. Frank Penny, the general manager of the yard, " told him
to give up his cart and mule to one Atkinson, and get up steam,
and saw wood that day ; that he did not know how to use or
manage the saw, and had never sawed wood before ; that neither
Mr. Penny nor any one else showed him how to manage the
saw ; that he used the saw as carefully as he could, and, after
sawing about a half-hour, thought the saw struck a knot, or
hard piece in the stick of wood he was holding on the table ;
that the saw was dull, and not sharp enough to cut through it,
and jerked the wood suddenly from the table, pulled his right
hand against the saw, and the saw then cut his hand, and dis-
abled it so that he can only use his thumb." Penny, the
superintendent of the yard, was examined as a witness for the
defendant, and testified that, on said 11th February, " he re-
ceived a rush of orders for wood and coal, and was short of
hands ; that he then employed one Atkinson to run the saw,
who was just going to work when plaintiff asked him (witness)
to let him run the saw that day ; that he asked plaintiff if he
knew how to manage it, and plaintiff replied that he knew all
about sawing wood ; that he then told plaintiff he did not care
who run the saw, so that he got the wood sawed in time, and
told him to give his cart and mule to said Atkinson and go to
work." Plaintiff himself testified, also, " that he was perfectly
sober, and had not drank any intoxicating liquor that morning ;"
but one of defendant's witnesses stated, that he saw him take
one drink of whiskey, and when he went to the saw to com-
mence work, another servant told him, " that he did not under-
stand the saw, and would get hurt ; that the old engine was not
so good, and he had better not fool with it ;" and that he told

plaintiff this, "because, from the way plaintiff was acting, he thought he was under the influence of liquor and worked awkwardly."

As to the quality and condition of the saw at the time of the accident, plaintiff testified, "that when he commenced sawing he did not know whether the saw was sharp or not, and knew nothing about the saw; that defendant had, up to February 1st, kept one Julien to superintend the work at the yard, and also to look after the saw and machinery, and to keep the saw sharp and in proper condition; but that since February 1st, when Julien left, there had been no one regularly employed to look after the saw and engine." Said Julien, who was examined as a witness for plaintiff, testified that "the defendant's engine, saw and machinery were of the best make and pattern, and were in good order and condition on said February 1st, when he left defendant's service; that he has since seen it running almost every day, and has not discovered any break or defect in it or any part of the machinery; that he never let any one attend to the saw, without first showing him how to saw the wood, and how to hold it on the table; that it is dangerous to feed the saw, unless the feeder understands how to do it, and is very careful in doing so; that when the saw strikes a knot in sawing, it has a tendency to jerk the wood off the table, unless held very firmly; that a dull saw would make more resistance in cutting, and would require that the wood be held down more firmly, than if the saw was sharp; that he sharpened the saw once or twice a week, and sometimes oftener, depending on the amount and character of the work done; that it was sometimes necessary to sharpen it almost every day; and that he considered it necessary for the safety to have some one who understood the business to superintend the machinery and look at it every day or two, to see that the saw was in proper condition, and to sharpen it when needed." Frank Penny, who succeeded said Julien as superintendent at the yard, and who was examined as a witness on the part of the defendant, "testified that the saw and engine, and all the machinery pertaining to the same, were in good condition and running order on the day the plaintiff was cut, and on the day before, and has been ever since; that it always run steady and plumb, and was sharpened by the man regularly employed to saw wood; that it was usually sharpened every three or four days, according to the quantity and quality of wood cut on it; and that plaintiff was sawing a stick of black-jack wood when he got his hand cut."

On this evidence, the court charged the jury, at the instance of the plaintiff, as follows: "If the jury believe that the saw was out of order, and more dangerous than a sharp saw by reason of not being properly sharpened; and that the dullness

[Hall v. Posey.]

of the saw caused the injury; and that this was unknown to the plaintiff; and that it would have been known to the defendant, but for the want of reasonable care and diligence in keeping the saw in proper condition; then they ought to find for the plaintiff." The defendant excepted to this charge, and requested the court, in writing, to instruct the jury, "that they must find for the defendant, if they believed the evidence;" and he duly excepted to the refusal of this charge.

The overruling of the demurrers to the complaint, the charge given, and the refusal of the charge asked, are now assigned as error.

L. II. FAITH, for the appellant.—(1.) The complaint was defective in the several particulars pointed out by the demurrers.—Wood's Master and Servant, 754, 803; *Campbell v. Railroad Co.*, 53 Geo. 488; *Railroad Co. v. Barber*, 5 Ohio St. 541; *Moss v. Railroad Co.*, 8 Amer. Rep. 126. (2.) The charge given by the court is faulty and erroneous, because it does not limit the belief and conclusions of the jury to the evidence before them; and because it assumes that the saw was not properly sharpened, when there was no evidence to that effect; and because, if there was evidence to show that fact, its sufficiency should have been left to the jury.—*Mc-Dougald v. Rutherford*, 30 Ala. 260; *Herges v. The State*, 30 Ala. 45; *Jones v. Fort*, 36 Ala. 449. (3.) On the evidence adduced, all of which is set out in the bill of exceptions, the plaintiff showed no cause of action, and the general charge asked ought to have been given.— *Whittaker v. Coombs*, 14 Bradw. Ill. 198; *Smoot v. Railway Co.*, 57 Ala. 18; Wood's Master and Servant, 682, 686, 692, 698, 741; 2 Amer. Rep. 497; 3 Amer. Rep. 143; *Baker v. Railroad Co.*, 68 Geo. 699; 91 Illinois, 474; 89 Illinois, 141; 40 Mich. 247; 28 How. Pr. 472; 3 Hurls. & Nor. 258; 25 N. Y. 566; 31 Cal. 376; 102 Mass. 572; 108 Illinois, 113.

G. L. SMITH, *contra*, cited the following authorities: (1.) As to the sufficiency of the complaint: *Thomas v. M. & O. Railroad Co.*, 42 Ala. 673; *M. & M. Railway Co. v. Crenshaw*, 65 Ala. 569; 2 Thompson on Negligence, 984, § 4. (2.) As to the correctness of the charge given, and of the refusal to give the general charge asked: *Smoot v. M. & M. Railway Co.*, 67 Ala. 17; *Thomas v. M. & O. Railroad Co.*, 42 Ala. 712; *Springer v. The State*, 58 Ala. 421.

STONE, C. J.—The complaint in this case is equally as full, explicit and direct, as the complaint in the case of *M. & O. R. R. Co. v. Thomas*, 42 Ala. 672. That complaint was

demurred to, and, on very careful consideration, was held sufficient. Our Code forms are very brief, and in their phraseology, very general.—Code of 1876, §§ 2978–9. The demurrer in this case was properly overruled.— *Leach v. Bush*, 57 Ala. 145 ; *M. & M. Railway Co. Crenshaw*, 65 Ala. 566.

The appellant excepted to the charge of the court which was given at the request of the appellee, plaintiff below. It is here contended, that this charge is faulty, " in not limiting and confining the belief of the jury to the evidence before them." We do not think there was any thing in this objection. The oath administered to the jury required them to render a true verdict according to the evidence ; and to suppose they would entertain and act on any *belief* which was derived from sources other than the testimony, or the influences naturally and reasonably arising out of the facts proved, would be to impute to them a wicked disregard of their sworn duty, or great folly, which would show their unfitness for the trust confided to them. If counsel apprehended the jury would be misled by the instruction, it was a proper subject for an explanatory charge.— *O'Donnell v. Rodiger*, 76 Ala. 222.

A second criticism urged against this charge is, that it assumes as fact some things which rested for their establishment entirely on parol testimony, without referring the sufficiency of the testimony to the jury. We do not concur with counsel in this interpretation of the charge. To submit to the jury the inquiry, whether the saw was out of order, and more dangerous by reason that it had not been sharpened, is equivalent to inquiring of them whether the saw was dull, and whether dullness put it out of order, and rendered it more dangerous. There is nothing in this objection.

There was no error in refusing the general charge asked by defendant, that " if the jury believe the evidence they must find for the defendant." That charge is proper only when there is no conflict in the testimony, and all tends to prove certain facts, which, if found, necessarily lead to the result claimed ; or, second, when conceding the existence of every fact which can be found or inferred from the testimony favorable to one of the parties litigant, the other party is entitled to a verdict. This latter phase of the principle arises, when the plaintiff, after introducing all his testimony, fails to make a case which the law deems actionable. It also arises when the plaintiff proves a *prima facie* case, or presents testimony which, if believed, makes a *prima facie* case for recovery, and the defense relied on, even if fully believed, is, in law, no defense to the action. It is for the reasons stated above that this form of charge is assimilated to a demurrer to testimony, and that it should never be given nor asked, when there is any discrep-

[Shields v. Sheffield.]

ancy, no matter how slight, in the testimony bearing on any matter material to the issue.—1 Brick. Dig. 335, § 3 ; *Davidson v. State, ex rel.*, 63 Ala. 432 ; *Seals v. Edmondson*, 73 Ala. 295. The testimony of. plaintiff, Posey, and of the witness Penny, as to the circumstances under which plaintiff was in control of the saw on the day of the injury, is not sufficiently in harmony, and not sufficiently free from conflict, to justify the giving of the general charge.

Affirmed.